UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 09-33328 |
| AMERICAN PRODUCT DISTRIBUTORS, INC., | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) |

**MOTION OF DEBTOR-IN-POSSESSION FOR EMERGENCY AND FINAL ORDERS PURSUANT TO §§ 105 AND 364 AUTHORIZING THE DEBTOR-IN-POSSESSION TO INCUR UNSECURED DEBT PURSUANT TO 11 U.S.C. §364(C)**

American Product Distributors, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor" or "APD") hereby moves (the "Motion") for entry of an order under 11 U.S.C. §364(c) authorizing the Debtor to incur unsecured debt. In support of the Motion, the Debtor respectfully represents as follows:

**Introduction**

1. On December 1, 2009 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as debtor-in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

2. No statutory committees have yet been appointed in this case by the U.S. Bankruptcy Administrator.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief sought herein are sections 105(a), 364, 1107(a), and 1108 of the Bankruptcy Code.

## Background

5. The Debtor is a privately owned distribution company that sells and distributes consumable products including office supplies, industrial and janitorial supplies and business imaging supplies to corporations and institutions nationwide. As a minority owned and operated business APD offers nationwide Tier I minority purchasing by selling and invoicing companies on a direct basis or Tier II minority purchasing by selling products indirectly to companies.

6. Prior to the Petition Date the Debtor executed a promissory note ("Note") in favor of Office Depot, Inc. ("Office Depot") in the original principle amount of $5,000,000.00. In addition, APD executed a security agreement ("Security Agreement") securing the Note which purports to grant Office Depot a blanket lien in APD's collateral.

7. On or about August 19, 2009, Office Depot commenced an action against APD in United States District Court for the Western District of North Carolina, case number 3:09-cv-00357-FDW-DCK alleging, among other things, that APD breached the terms of the Security Agreement.

## Relief Requested

8. In light of the litigation pending between Debtor and Office Depot, Debtor is not requesting the use of Office Depot's purported cash collateral. Accordingly, the Debtor urgently requires post-petition financing to continue its operations during the pendency of its Chapter 11 case. If the Debtor is unable to obtain sufficient operating liquidity to

meet its post petition obligations on a timely basis, a permanent and irreplaceable loss of business, causing loss of value to the detriment of the Debtor and its creditors will occur. This potential loss of revenue and going concern value would be extremely harmful to the Debtor, its estate and creditors at this critical juncture.

9. Given the Debtor's current financial condition, financing arrangements and capital structure, the Debtor cannot obtain unsecured credit or other financial accommodations allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. Post-petition financing is not otherwise available without the Debtors granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in section 503(b) and 507(b) of the Bankruptcy Code.

10. In order to continue to operate its business in the ordinary course, including, without limitation, paying critical post-petition wages and salaries and purchasing inventory essential to the preservation of the Debtor's assets and business enterprises, the Debtor has determined, in the exercise of its sound business judgment, that a post petition credit facility from Ray and Cynthia M. Kennedy ("Lenders") that permits the Debtor to obtain up to $310,000 in new funds, is critical.

11.. The Debtor and Lender have engaged in good faith negotiations that have culminated in an agreement by Lenders to provide the Debtor up to $310,000 of post-petition financing. The credit facility shall be a five year loan fully due and payable on December 1, 2014. Interest only payments shall be made on a quarterly basis at an 8% interest rate. Upon maturity Debtor shall be obligated to pay 1.3 times the amount of the initial loan or $403,000. The loan shall be unsecured and, pursuant to Section

364(c) of the Bankruptcy Code, shall have priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code.

### Basis for Relief

12. As debtor-in-possession, Debtor has the powers and duties of a bankruptcy trustee, subject to such limitations or conditions as the court prescribes. 11 U.S.C. § 1107(a). A "trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under Section 503(b)(1) as an administrative expense." Id. § 364(a). If not in the ordinary course of business, the court, after notice and hearing, may authorize the trustee to obtain unsecured credit or incur unsecured debt allowable as an administrative expense. Id. § 364(b). "Section 364(c) of the Code empowers the Court to authorize a debtor-in-possession (or a trustee) to obtain unsecured credit out of the ordinary course of business. That section grants the Court broad authority, at the outset of a case, to approve borrowing arrangements that are found to be in the best interests of the debtor, its estate, and its creditors." *In re Payless Cashways, Inc.*, 268 B.R. 543, 545 (Bankr. W.D. Mo. 2001)

13. On numerous occasions, courts have entered orders authorizing debtors to incur unsecured debt outside the ordinary course of business. *See e.g. In re Hartley*, 39 B.R. 273, 281 (Bankr. N.D. Ohio 1984); *In re Standard Oil & Exploration, Inc.*, 136 B.R. 141 (Bankr. W.D. Mich. 1992); *In re Payless Cashways, Inc.*, 268 B.R. 543 (Bankr. W.D. Mo. 2001).

14. In this case, prior to the Petition Date, the Debtor sought alternative financing sources. However, in light of the emergency nature of the Debtor's needs, in order to obtain any other source of financing would have required payment of fees and a period

of time in which to complete substantial due diligence, while, on the other hand, the knowledge and relationship that the Lenders possess in respect of the Debtor's business permits them to provide operating funds on an emergency basis. Realistically, potential sources of the proposed financing for the Debtor, obtainable on an expedited basis and on reasonable terms, are non-existent.

15. In such circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Sav. and Loan Ass'n. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Instead, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c) and (d) of the Bankruptcy Code. Id.; *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 1997, 120 N.4 (N.D. Ga. 1989).

16. Moreover, bankruptcy courts routinely defer to the Debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Inst. Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.* 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the Debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision

for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

17. In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id.* at 513-14 (footnotes omitted).

18. In this case, the Debtor has exercised sound business judgment in determining that a post-petition credit facility is appropriate. Without the liquidity provided by the proposed loan, the Debtor will be unable to pay vendors, employees and other constituencies that are essential to the orderly operation of its business.

19. The relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business and the management and preservation of its property.

### Notice

20. The Debtor will be providing notice of the hearing on this Motion, service of the Motion and exhibits thereto, and the relief requested in the Motion as required by applicable law, including without limitation, the provisions of the Bankruptcy Code, the Bankruptcy Rules, including without limitation, Bankruptcy Rule 4001(c), and the directions of the Court, by serving copies of the Motion and the related Notice of

Hearing, by telecopier or e-mail or by first class mail, in properly addressed, post prepaid envelopes upon the 20 largest unsecured creditors of the Debtors and the United States Bankruptcy Administrator.

WHEREFORE, the Debtor respectfully requests that the Court:

(1) Conduct an emergency hearing on this Motion as soon as the Court's calendar permits;

(2) Determine that Debtor has proved adequate notice of the hearing on this Motion;

(3) Enter an order authorizing the Debtor to incur unsecured debt upon the terms and conditions as set forth herein;

(4) Enter an order allowing the debt with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code; and

(5) For such other and further relief as is just and proper.

This the 3rd day of December, 2009.

*/s/ Karen K. Carroll*
Karen K. Carroll NCSB#40240
Shuford Hunter, PLLC
Attorneys for Debtor
301 S. McDowell Street, Suite 1012
Charlotte, NC 28204
Tel. 704.377.8764